**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-02571-RM-MJW

ANNETTE CANALES,
VICTOR BARRERA,

Plaintiffs,

v.

AMPCO SYSTEM PARKING a/k/a ABM PARKING SERVICES, INC.,

Defendant.

---

**ORDER GRANTING IN PART and DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## I.      INTRODUCTION

Plaintiffs Annette Canales (Ms. Canales) and Victor Barrera (Mr. Barrera) bring six

claims for relief against defendant AMPCO System Parking a/k/a ABM Parking Services Inc.

(ABM).  (ECF No. 11).  Plaintiffs claim: (1) discrimination against Mr. Barrera under the

Americans with Disabilities Act as Amended (ADAA), 42 U.S.C. §12112 by ABM; (2)

discrimination against Ms. Canales under the ADAA, 42 U.S.C. §12112 by ABM; (3)

discrimination by ABM based on national origin in violation of Title VII of the Civil Rights Act

of 1968, 42 U.S.C. §2000e-2(a)(1) against both plaintiffs; (4) ABM's termination of Mr. Barrera

was in violation of public policy; (5) ABM's retaliation against Ms. Canales was in violation of

42 U.S.C. §2000e and 42 U.S.C. §12203 and (6) gender based discrimination by ABM against

Ms. Canales.  *Id.*

1

ABM moves for summary judgment on all plaintiffs' claims arguing that ABM did not discriminate: (1) on the basis of disability against Mr. Barrera who ABM contends, did not ever supply ABM with a valid release stating that he could perform the essential functions of his job and in fact applied for disability benefits in which he claimed that he was disabled and unable to work with or without reasonable accommodation; (2) on the basis of disability against Ms. Canales but rather modified her job five times based on her examining physician's restrictions; (3) on the basis of plaintiffs' ethnicity; or (4) on the basis of gender; and (5) did not retaliate against Ms. Canales or (6) terminate Mr. Barrera in violation of public policy.  (ECF No. 64).

## II      FACTUAL BACKGROUND

### A.      Undisputed Facts

The following undisputed facts are gleaned from the court's review of the record.

ABM at all relevant times employed more than 500 employees.  (ECF No.11, p.3).

### 1.      Mr. Barrera:

ABM hired Mr. Barrera as a shuttle bus driver at Denver International Airport (DIA), on November 12, 2004.  (ECF No.11, p.6).  On March 2, 2010, Mr. Barrera injured his lower back during the course of his employment.  (ECF No.11, p.6).  On December 20, 2010, Mr. Barrera filed an incident report stating that he had reinjured his lower back at work when lifting a heavy trash can.  (ECF No.65-7).  On December 27, 2010, Mr. Barrera was released to return to work with restrictions - no lifting over 10 pounds, no prolonged standing and/or walking longer than 30 minutes per hour, no bending greater than 10 times per hour and no pushing and/or pulling over 10 pounds.  (ECF No. 65-8).  In a January 11, 2011, physician activity status report, this

release was updated to include the added restriction of no lifting over one pound.  (ECF No. 65-9).

On August 9, 2011, Mr. Barrera requested and was granted leave pursuant to the Family Medical Leave Act (FMLA) to obtain surgery on his back.  (ECF No. 64-16).  He returned from FMLA leave on November 7, 2011.  *Id.*  Mr. Barrera completed an ABM incident report on December 22, 2011, in which he alerted ABM that he was taking Tramadol 50 mg and Cyclobenzaprine 10 mg (potentially sedating drugs), that he worked with pain in his back, right leg and experienced foot numbness, was having problems with sleep and was driving with his left foot because he had "no obtion [sic]".  (ECF No. 64-17; 64-4, p.10).  He delivered this incident report to Marcia Nelson, the ABM Assistant General Manager at DIA since October 2008.  (ECF No. 64-4).  Ms. Nelson's duties included ensuring compliance with various contracts, and oversight of ABM employee relations, discipline and scheduling.  (ECF No. 64-4).

Frank Duda is ABM's General Manager at the DIA location.  (ECF No. 64-18).  Mr. Duda's duties include ensuring compliance with various state and federal laws, management of three collective bargaining agreements with two separate unions and involvement with disciplinary issues.  *Id.*  In a letter dated December 23, 2011, Mr. Duda upon receipt of Mr. Barrera's December 22, 2011, incident report, pursuant to the collective bargaining safety agreement, challenged Mr. Barrera's physical ability to perform the essential functions of his bus attendant job and directed him to submit to a company-paid physical examination on December 26, 2011.  (ECF No. 64-19, p.1).

The letter instructed Mr. Barrera to provide the examining physician with the attached bus attendant job description and medical authorization form.  (ECF No. 64-19).  In a note dated

December 26, 2011, the examining physician found that Mr. Barrera was "unable to drive at this time" and checked the box indicating that Mr. Barrera was unable to perform the essential functions of the position as described.  (ECF No. 64-19, p.4).  Mr. Barrera signed the December 26th form.  *Id.*

On January 9, 2012, Ms. Nelson proffered a request for leave from January 9, 2012 through February 23, 2012 which Mr. Barrera refused to sign stating he'd prefer to be fired although he did take the FMLA leave.  (ECF Nos. 64-20; 64-22, p.12).  Mr. Barrera did not return to work on February 23, 2012.  (ECF No. 62-21).  Ms. Nelson in a letter to Mr. Barrera dated March 12, 2012, noted that he had not provided ABM with the required fitness for duty release and instructed him to let ABM know of his intent to return to work no later than March 27, 2012.  On March 8, 2012, Mr. Barrera was again examined and the physician determined he was unable to perform the essential functions of his position.  (ECF No. 64-23).

Mr. Barrera provided ABM with a note from his Kaiser Permanente doctor stating that he could resume work on April 13, 2012, with no restrictions.  (ECF No. 64-25).  Mr. Barrera does not dispute that he told Mr. Duda that his doctor had agreed to release him to work because he was currently not working and needed the money.  (ECF No. 85-1, p.13).  Mr. Barrera also told Mr. Duda that he could still only drive with his left leg because of his continuing problems with his right leg.  (ECF No. 64-24, 73-16, p.3).

Mr. Duda again challenged Mr. Barrera's physical ability to perform the essential functions of his job and required him to submit to a company-paid examination on April 16, 2012 and to provide the physician with the attached job description and medical authorization

form.  (ECF No. 64-24).  On April 16, 2012, the physician indicated on the form that Mr. Barrera was not able to drive or to perform the essential functions of his position.  (ECF No. 65-10).

On April 20, 2012, Mr. Barrera's physician opined that he could not drive, could not bend, twist or walk/stand for more than 45 minutes at a time and could not lift more than 20 pounds.  (ECF No. 65-11).  On May 15, 2012, a physician for the Colorado Department of Labor and Employment determined that Mr. Barrera had restrictions – namely that he was unable to use his right leg due to numbness – that would keep him from returning to his usual occupation. (ECF No. 65-12).  On May 17, 2012, Dr. Moore opined that Mr. Barrera could not drive "due to Rt radiculopathy", could occasionally lift less than 20 pounds and could walk/stand for less than 45 minutes per hour.  (ECF No. 65-13).  On June 20, 2012, Mr. Barrera filed for disability benefits in which he claimed that he was disabled and unable to work since January 9, 2012. (ECF Nos. 64-22, pp7-8; 65-14, p.8).

2.     Ms. Canales:

ABM hired Ms. Canales as a shuttle bus driver on August 7, 2007.  (ECF No.11, p.3). On December 11, 2011, a street sweeper hit Ms. Canales' ABM shuttle while she was driving it. (ECF No. 64-2).  As a result she was assessed as having sustained thoracic and lumbar strains and released to return to work on March 13, 2012, with restrictions of no lifting over five pounds, no bending greater than five times per hour and no driving the company vehicle.  (ECF No. 65-1).

In a letter dated January 5, 2012, Ms. Nelson advised Ms. Canales of a modified duty job consistent with her restrictions that was available for her on January 4, 2012.  (ECF Nos. 64-3; 64-5, pp.6-7).  Ms. Canales would be auditing passenger wait times outside at the Pikes Peak,

landslide and overflow facilities at DIA and was advised to dress accordingly.  *Id.*  Ms. Canales'

pay, benefits and hours would not change as a result of the job modification.  *Id.*  Ms. Canales

accepted the modification and had a vehicle in which to sit while completing her first shift on

January 3rd but not for her shifts on January 4th or 5th.  (ECF No. 64-5, p.7).  Ms. Canales did not

complete her full shift on January 4th or 5th because she complained that sitting outside in the

cold caused her back to spasm painfully.  (ECF Nos. 64-6, pp2-3; 73-5, p.1; 73-7, p.5)

In a letter dated January 6, 2012, Ms. Nelson informed Ms. Canales that ABM had a

modified work duty job available consistent with her current work restrictions.  (ECF No. 64-7).

Ms. Canales would be performing passenger wait timing on B Concourse until midnight after

which time she would be stationed at the turnstile and required to sweep and detail/clean the

interior of buses.  *Id.*  She would continue to have her same work hours, wages and benefits.  *Id.*

The B Concourse was an indoor location which might be warmer and more in keeping with her

medical restriction than her previous outside assignment(s).  (ECF No.64-6, p.4).  Ms. Canales

refused to sign this modified duty letter although she stated she would do the work.  (ECF No.

64-7).  In a letter dated January 10, 2012, Ms. Nelson reiterated the job modification to B

Concourse adding that it would be from inside the B Center core.  (ECF No. 64-8)  Ms. Canales

signed the modification indicating that she accepted the modified work duty.  *Id.*

Ms. Canales' January 11, 2012, Physician Work Status (PWAS) report states that she can

return to work immediately but could not lift more than five pounds, reach above her shoulders

or drive a company vehicle and should avoid cold exposure.  (ECF No. 65-2).  On January 17,

2012, Ms. Canales was unable to complete her shift and was unable to work the next day.  (ECF

No. 73-5).  On January 19, 2012, Ms. Canales accepted another modified work duty to sweep

and detail/clean the interior of buses.  (ECF No. 64-9).

From February 8, 2012 through April 9, 2012, Ms. Canales' PWAS reports indicated that she was restricted from bending more than five times per hour.  (ECF No.73-4, pp.3-6).  That restriction was eliminated on her May 8, 2012, June 5, 2012 and July 12, 2012 PWAS reports however, the bending restriction was again imposed on Ms. Canales' August 28, 2012 PWAS Report.  (ECF Nos. 73-4, pp.7-9; 65-3).

In a letter dated August 30, 2012, Ms. Nelson proposed a temporary modified duty position within Ms. Canales' current work restrictions.  (ECF No. 64-10).  The proposed administrative assistant position would require training, be temporary, at a lesser pay rate and would require Ms. Canales to apply for and be selected for the position in order to become permanent.  (*Id.* at p.1*).*  If she were chosen for the permanent position, her benefits would change to reflect the administrative/managerial plan.  *Id.*  Ms. Canales refused to sign or accept the modified position and left work.  (*Id.* at p.2; ECF No. 64-11, p.1).  However, upon further discussion with Ms. Nelson regarding Ms. Canales' issues with the proposed hours, Ms. Canales signed and accepted the modified work position on September 4, 2012.  (ECF No. 64-11).

A January 29, 2013, PWAS report released Ms. Canales with the following permanent restrictions: no lifting over 20 pounds, no bending greater than five times per hour and no pushing or pulling over 20 pounds of force.  (ECF No. 65-4).  In a letter dated February 4, 2013, ABM offered Ms. Canales permanent modified work as a bus driver on the Cargo, Tango or Airside routes.  (ECF No. 64-12).  Because she had been working a temporary modified position for an extended time she was required to go through a detailed training program beginning on February 19, 2013.  *Id.*  Rather than accepting or declining the position offered, Ms. Canales responded in writing on February 13, 2013, that she was taking pain medication and had been told by the attending physician's assistant that she should not drive while on the medication.

(ECF No. 64-12, p.2).  A medical examination report for commercial driver fitness determination dated February 15, 2013, stated that Ms. Canales was "on multiple potentially sedating medications that disqualify her from driving a commercial vehicle."  (ECF No. 65-5).

On October 14, 2013, a medical examination report for commercial driver fitness determination stated that Ms. Canales had "some decrease in lumbar flexion but is able to squat without difficulty."  (ECF No.65-6).  That examiner determined that she was qualified to drive when wearing corrective lenses and only intrastate.  *Id.*  In a letter dated November 3, 2013, Ms. Nelson renewed the position offered to Ms. Canales on January 29, 2013.  (ECF No. 64-13, p.1).  Ms. Canales accepted the permanent modified work duty on November 4, 2013.  (ECF No. 64-13, p.2).

## B.    Disputed Facts:

### 1.    Mr. Barrera:

The parties dispute whether Mr. Barrera complained about his perception that ABM discriminated in its modified job assignments based on ethnicity and/or whether there is a statistically significant pattern of discrimination by ABM.  (ECF Nos. 11, p.6; 64-22, pp.4-6; 73-17; 73-20; 85-1, p.20).

### 2.    Ms. Canales:

The parties disagree about why Ms. Canales did not have a vehicle for her modified job assignment on January 4, 2012 and January 5, 2012; whether she complained about the cold exacerbating her back injury and why she was absent for at least part of those two shifts.  (ECF No. 64-5; 73-5; 73-6).  Ms. Canales alleges that she was treated differently when injured and was

reassigned to an "adverse" pretextual position auditing wait times in conditions that were extreme and physically taxing while males and non-Hispanics were not when they were injured. (ECF No. 85-2, p.16).

There is also disagreement between the parties about why Ms. Canales, on August 30, 2012, was offered the administrative assistant position - a position with less pay and fewer hours - and whether that position change was necessary to accommodate her medical restrictions or was instead based on her ethnicity and/or in retaliation for Ms. Canales filing an EEOC charge on May 30, 2012.  (ECF No. 64-10; 85-2, p.17).

### III.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc*., 41 F.3d 567, 569 (10th Cir. 1994); *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Zwygart v. Board of County Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l*

*General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987); *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

The analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D.Colo.2002); *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir.2002).

## IV.   DISCUSSION

### A.   Accommodating Disability under the ADAA:

The ADAA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. §12112(a). ADAA cases are generally are evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* burden-shifting analysis requires a plaintiff to raise a genuine issue of material fact on each element of his/her *prima facie* discrimination case. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F3d 1076, 1079 (10th Cir. 1999); *Carter v. Pathfinder Energy Services, Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011).

To qualify for relief under the ADAA, a plaintiff must establish that: (1) s/he is a disabled person within the meaning of the ADAA; (2) s/he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against him/her because of that disability. *Butler v. City of Prairie Village,* 172 F.3d 736, 748 (10th Cir. 1999).

The statute expressly defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8).  Disability discrimination by statutory definition, includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an ... employee," unless the required accommodation "would impose an undue hardship" on the business.  42 U.S.C. §12112(b)(5)(A).

> Reasonable accommodation may include (but is not limited to):
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition of modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. §12111(9)(A-B).

1.     Mr. Barrera:

Mr. Barrera alleges that as a result of his back injury, he is substantially limited in major life activities such as walking, working driving, sitting for more than 45 minutes, standing or lifting over 20 pounds however, he claims that with accommodation, he is able to perform the essential functions of his job as a bus attendant.  (ECF No. 11, pp. 7-8).  He further contends that his requested accommodation (including placement in various vacant fueler positions and driving with his left foot), was withdrawn without ABM engaging in an interactive process, when he disclosed that he was driving with his left foot.  (ECF No. 11, p.8).

Defendant ABM asserts that Mr. Barrera's claim fails because he cannot establish an essential element of his ADAA claim. (ECF No. 64, p.12). Specifically ABM argues that Mr. Barrera is estopped from claiming that he could perform the essential functions of his job because his application for social security disability stated that as of January 9, 2012, he was disabled and unable to work. (ECF 65-14, pp.8-23). ABM also contends that Mr. Barrera's ADAA claim fails based on the medical examiner's December 26, 2011, opinion that Mr. Barrera was unable to perform the essential functions of his job as a bus attendant, was restricted from driving a vehicle and as a matter of law Mr. Barrera was therefore not a qualified individual. (ECF 64-19).

Mr. Barrera's ADAA claims are as stated above, governed by the *McDonnell Douglas* framework. *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1323 (0th Cir. 1997). Thus "a plaintiff's sworn assertion in an application for disability benefits that [he] is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case — at least if [he] does not offer a sufficient explanation." *Cleveland v. Policy Sys. Corp.* 526 U.S. 795, 806 (1999)("ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, [he] must proffer a sufficient explanation.").

Under this standard, the explanation must be sufficient to warrant a reasonable juror finding that the plaintiff could nonetheless perform the essential functions of his job with or without accommodation. *Id.* at 807. Mr. Barrera's explanation is that he was performing the essential functions of his job until January 9, 2012. (ECF No. 73, p.5). He further explains that his note regarding his need to drive using his left foot was a request for continuing accommodation which, Mr. Duda's testimony indicates was possible through a Department of Transportation exemption. (ECF Nos.73, p.5; and 73-16, pp.3-4). Given Mr. Barrera's

limitations with English revealed by the evidence submitted, I find that a reasonable juror could determine that this was, indeed, a request for continuing accommodation.

The ADAA defines the term discriminate as:

> "not making *reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . . ."

42 U.S.C. §12112(b)(5)(A)(emphasis added).

It is undisputed that Mr. Barrera filed a disability claim stating he was disabled and unable to work as of January 9, 2012.  Mr. Barrera claims that subsequent to January 2012, but prior to June 2012, he attempted to return to work but, because ABM refused to engage in interactive accommodation discussions, he was never put back on a schedule.  (ECF No. 73, p.6). While Mr. Barrera's remedy would more appropriately be to initiate an ADAA claim rather than to file a disability claim, viewing the facts in the light most favorable to Mr. Barrera, the nonmoving party, I find there *is* a material fact in dispute namely, whether ABM attempted to accommodate Mr. Barrera's disability.  The determination of whether specific requested accommodations were reasonable and whether Mr. Barrera could perform the essential functions of a bus attendant position if so accommodated are thus for a jury.  ABM's motion for summary judgment on Mr. Barrera's ADAA claim is therefore DENIED.

2.      Ms. Canales:

Ms. Canales alleges that she was perceived as disabled and as a result was "faced with an assignment that defines hostile treatment."  (ECF No. 73, p.2).  Her claim is related to (a) ABM's January assignments that placed her in cold outdoor locations which exacerbated her back injury

and (b) ABM's August 30, 2012, reassignment to a lower paying administrative job with a different schedule.  ECF No. 73, pp.2-3).  Ms. Canales remained in that administrative position until she returned to driving a bus on November 4, 2013.  *Id.*  ABM counters that all five job duty modifications that were provided by Marcia Nelson were reasonable and consistent with the restrictions placed on Ms. Canales by her examining physicians.

It is undisputed that the first PWAS report that ABM received which indicated that Ms. Canales should avoid cold, was on January 11, 2012.  (ECF No.85-2, p.9).  Nor is it disputed that immediately after receiving it, ABM further modified her job duty to place her at an inside post to mitigate her exposure to cold.  (ECF No. 64-6, p.3).  The record reflects that each of the job duty modifications she received, including the February 4, 2013, offer of permanent modified work as a bus driver, reflected her current medical restrictions.  (ECF Nos. 64-3; 64-8; 64-9; 64-10; 64-11; 64-12; 65-1; 65-2; 65-3; 65-4).

Viewing the facts in the light most favorable to Ms. Canales, I find that she has failed to establish her *prima facie* ADAA discrimination case.  ABM's motion for summary judgment on her ADAA discrimination claim is therefore GRANTED.

## B.    Discrimination based on National Origin under Title VII:

Both plaintiffs allege discrimination on the basis of national origin in violation of Title VII.  (ECF No. 11, pp.9-10).  Plaintiffs allege that because of their national origin, they were replaced in their positions (Ms. Canales was demoted to a lower paying position and Mr. Barrera was terminated), by non-Hispanic employees[1].  (ECF No.11, p.9).  Plaintiffs also allege a pattern

---

[1] The record before the court does not support Plaintiffs' claim that other non-Hispanic persons were hired in their place.

and practice of national origin discrimination by ABM based on an unauthenticated statistical analysis of the ABM's workforce at its DIA facility.  (ECF No.73-20).

ABM responds that "all job actions were taken after determinations by an independent medical examiner that each Plaintiff was not qualified to perform their [sic] jobs" and were therefore not discriminatory.  (ECF No. 65, p.14).  ABM also objects to admission of Plaintiffs' statistical analysis[2].  (ECF No. 64, p.9).

The basic allocations of burdens of proof in a Title VII case alleging discriminatory treatment are set forth in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973) as follows: (1) plaintiff has the burden of proving his/her *prima* facie case (inferring unlawful discrimination which resulted in the adverse action), by a preponderance of the evidence; (2) if the plaintiff succeeds in proving the *prima facie* case the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment action and (3) should the defendant carry that burden, the plaintiff then has the opportunity to prove that the reasons offered by defendant are merely a pretext for discrimination.  *McDonnell-Douglas, 411 U.S.* at 802-804.

A plaintiff must therefore initially establish his *prima facie* case by showing:  (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)[3].  A plaintiff "can establish evidence

---

[2] Plaintiffs' statistical study is not considered as support for Plaintiffs' discrimination claims because it is unauthenticated.  In order for documents to be considered by a court in support of or in opposition to a motion for summary judgment, they must meet a two-prong test: (1) the document must be attached to and authenticated by an affidavit which conforms to Fed.R.Civ.P. 56(e), and (2) the affiant must be a competent witness through whom the document can be received into evidence.  *In Re Harris,* 209 B.R. 990, 996 (10th Cir. BAP 1997)(quoting 11 James Wm. Moore, Moore's 2d 1186, 1196 Federal Practice §§ 56.10 [4][c][i], 56.14[2][c] (3d ed.1997)); see also *Toney v. Cuomo,* 92 F.Supp.2d 1186 (D.Kan. 2000), *aff'd* 221 F.3d 1353 (10th Cir. 2000).

[3] The Tenth Circuit has also framed this *prima facie* case of discriminatory discharge as one in which a plaintiff must demonstrate:  (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position and

of the third prong in various ways, such as 'actions or remarks made by decisionmakers,'
'preferential treatment given to employees outside the protected class,' or 'more generally, upon
the timing or sequence of events leading to [a] plaintiff's termination.'" *Barlow v. C.R. Eng.,
Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1100-01 (10th
Cir. 2005)).

### 1.    Mr. Barrera:

Mr. Barrera's national origin discrimination complaint appears based solely on his
termination.  In examining whether he establishes his *prima facie* case, I note that he belongs to a
protected class in that he is Hispanic.  Termination is clearly an adverse employment action.  The
issue is whether the circumstances give rise to an inference of discrimination.  I conclude that
Mr. Barrera fails to make an adequate showing of inference and, thus, fails to set forth a *prima
facie* case of discrimination.

Mr. Barrera does not rely on any similarly situated analysis.  Nor does he rely on
discriminatory statements or actions by those responsible for his termination.  Instead, Mr.
Barrera points to a single matter – a statistical analysis of the defendant's workforce.  (ECF No.
73, p. 11.)  As observed previously at note 2, Mr. Barrera's purported expert study is not
competent evidence.[4]  Additionally, and in an equally flawed manner, plaintiffs' response
references "10/02/11 awarded schedules" which counsel interprets as demonstrating percentages

---

satisfactorily performing plaintiff's job; (3) plaintiff was discharged; and (4) plaintiff's position was not eliminated after plaintiff's discharge.  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1150 (10th Cir. 2008) (citations omitted).  Relying upon this construction, however, does not materially alter the Court's analysis as the crucial inquiry is whether Plaintiff establishes that his termination occurred under circumstances giving rise to an "inference of unlawful discrimination."  *See Adamson*, 514 F.3d at 1150-51.

[4] Even if it were proper evidence, it would fail to establish a discriminatory inference with respect to Mr. Barrera's termination.  The Court has been provided with only selected pages from plaintiffs' report which fail to reveal who authored the report, his or her qualifications, the calendar years to which the analysis pertains, whether the comparative labor pool was national, state or local, or anything other than rank conclusions without support or actual analysis.

of African and non-African employees for various shifts and counsel's conclusions as to what these numbers show with respect to "highly sought" and "least desirable" shifts. But these are merely arguments of counsel. *Id.* Mr. Barrera does not point to evidence establishing the desirability of shift assignments – even assuming that shift assignments can create an inference with respect to Mr. Barrera's termination. Moreover, he does not even cite to the exhibit or record from which counsel's analysis has been conducted. My review of the response suggests that Mr. Barrera is relying upon ECF No. 73-17, but review of that document reveals flaws in counsel's analysis. Nowhere does the document identify the national original of employees. Instead, names alone are given. And the Court is being asked to assume national origin in a discrimination case based solely on the sound or spelling of an individual's name. This will not do.

For the reasons stated above ABM's motion for summary judgment is GRANTED with respect to Mr. Barrera's discrimination claim.

2.      Ms. Canales:

Ms. Canales remains employed by ABM as a shuttle bus driver and appears to base her claim of national origin discrimination on her job duty modifications including her auditing positions and her temporary administrative assistant position. In examining her *prima facie* case, I note that she belongs to a protected class in that she is Hispanic. She therefore has established the first prong.

However, each time ABM offered Ms. Canales a modified job duty, the record reflects that the offered job mirrored Ms. Canales' current medical restrictions. For example, when Ms. Canales complained on January 4 and 5, 2012, that she was unable to complete her shifts because

the cold painfully impacted her back injury, she was reassigned on January 6, 2012, to an inside position. (ECF Nos. 64-7; 65-2). I note that this decision was made despite Ms. Canales' medically determined need to avoid exposure to cold, not being reflected in her medical restrictions until January 11, 2012. *Id.*

Similarly ABM proposed Ms. Canales reassignment to a temporary administrative assistant position on August 30, 2012, two days after Ms. Canales' bending restriction - she was restricted from bending more than five times per hour - was re-imposed by her examining physician on August 28, 2012. (ECF No. 64-10). The record reflects that from February 8, 2012, through April 9, 2012, Ms. Canales' PWAS reports indicated that she was restricted from bending more than five times per hour. (ECF No.73-4, pp.3-6). That bending restriction had been eliminated in her PWAS Reports for the preceding three months, May through July. (ECF Nos. 73-4, pp.7-9; 65-3). Finally Ms. Canales' deposition testimony indicates she is unsure that her modified positions were a result of any national origin discrimination. (ECF No. 64-6, pp.8, 12).

Despite viewing the evidence in the light most favorable to Ms. Canales, I do not find she has established a *prima facie* case of discrimination based on national origin. ABM's motion for summary judgment on Ms. Canales' claim of discrimination based on national origin is therefore GRANTED.

## C.    Retaliation under Title VII:

Ms. Canales[5] contends that ABM retaliated against her after she filed two charges of discrimination against ABM and that as a result of those activities she suffered adverse

---

[5] Mr. Barrera has not complained of retaliation.

employment actions including demotion, suspensions and discipline.  (ECF No. 11, p.11)  Ms.

Canales supports her allegations with her May 30, 2012, EEOC filing[6] alleging discrimination by

ABM managers as a result of her injury (ECF No. 73-8), her demotion to an administrative

assistant and three disciplinary actions: a June 1, 2011 employee corrective action notice (ECF

No.73-22); a May 29, 2012 notice of corrective action (ECF No. 74-23); and a December 11,

2012, notice of corrective action.  All three corrective actions refer to alleged attendance

violations which Ms. Canales contends resulted from medical appointments, sick leave and shifts

she had traded with other employees.  (ECF No.11, p.5).

ABM argues that far from retaliating against Ms. Canales, it accommodated "every single

physical limitation Plaintiff Canales' physicians placed on her so she could continue to work for

the company."  (ECF No. 65, p.16).  ABM contends that Ms. Canales' job modifications were

made only to accommodate her physical limitations and she suffered no "adverse employment

action[s] contemporaneous with or subsequent to filing charges of discrimination pursuant to

Title VII.  (ECF No. 65, p.17).

Ms. Canales brings her claim against ABM pursuant to 42 U.S.C. §2000e-3(a), which

states:

> "It shall be an unlawful employment practice for an employer to discriminate against any
> of his employees or applicants for employment, for an employment agency, or joint
> labor-management committee controlling apprenticeship or other training or retraining,
> including on-the-job training programs, to discriminate against any individual, or for a
> labor organization to discriminate against any member thereof or applicant for
> membership, because he has opposed any practice made an unlawful employment
> practice by this subchapter, or because he has made a charge, testified, assisted, or

---

[6] Ms. Canales also asserts that she filed another charge of discrimination regarding hostile environment issues and various discrimination allegations including on-going retaliation on October 30, 2012.  (ECF No. 73, p.10).  That filing is not in the record before the court.

participated in any manner in an investigation, proceeding, or hearing under this subchapter [Title VII]."

There are three recognized elements in a retaliation claim: "(1) [the plaintiff] engaged in protected opposition to discrimination; (2) suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001).

In this instance, Ms. Canales has established that she engaged in a protected activity (filing her EEOC claim), and I find that a reasonable juror could determine that she suffered adverse employment actions. Ms. Canales task in meeting the three requisite elements is to show a causal link between the two.

It is undisputed that Ms. Canales was absent or late the days for which she received the corrective action notices. After considering Ms. Canales' medical restrictions and noting that ABM's offers of modified positions (including the administrative assistant position), consistently reflected those restrictions, I find there is insufficient evidence to support the requisite causal link between any arguable adverse employment action(s) and Ms. Canales' protected activity.

ABM's motion for summary judgment on Ms. Canales retaliation claim is therefore GRANTED.

**D.   Gender Discrimination under Title VII:**

Plaintiff in her Complaint, alleges that she was "subjected to adverse action, including leave without pay and demotion based on her gender." (ECF No. 11, pp. 11-12). ABM responds that both Ms. Canales' response to its motion for summary judgment and her deposition

testimony fail to provide support for her claim of discrimination based on her gender.  (ECF Nos. 65, p.15; and 85, pp.7-8).

Title VII cases require the employee to make a *prima facie* showing of discrimination by the employer." *Nulf v. Internat'al Paper Co.,* 656 F.2d 553, 557-58 (10th Cir. 1981)("Only when such a showing has been made does the burden shift to the employer to articulate some legitimate, nondiscriminatory reason for the questioned action.).  Ms. Canales must therefore show that: (1) she was a member of a protected group; (2) she suffered an adverse employment action; and (3) she suffered the adverse action under circumstances that give rise to an inference of discrimination.  *Hysten v. Burlington N & Santa Fe RR,* 296 F.3d 1177, 1181 (10th Cir. 2002).

There is no dispute that Ms. Canales, as a female, is a member of a protected class.  With respect to the second prong, Ms. Canales alleges that she "subjected to adverse action, including leave without pay and demotion in her position."  (ECF No. 11, pp.11-12).  ABM counters that there is no evidence in the record that any job reassignments were based on her gender.  (ECF Nos. 65, p.15 and 85, p.8).

Ms. Canales opposition brief does not address her claim of gender discrimination and provides no additional argument to support her original contentions.  Further the court notes that in deposition, when asked "[y]our belief is that you were placed in that [shuttle wait time] position by Marcia based on your sex, correct?"  Ms. Canales stated "I can't really say that." (ECF No. 64-6, p.8).

In responding to a motion for summary judgment, it is the plaintiff's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record.  *Cross v. The Home Depot,* 390 F.3d 1283, 1290 (10th Cir.

2003).  Ms. Canales has failed to come forward with any facts showing that she experienced circumstances that could give rise to an inference of gender discrimination.

Based on the record before the court, a reasonable juror could not determine that similarly situated male employees were treated differently or that there were other circumstances existing that could give rise to an inference of gender-based discrimination.  Ms. Canales has therefore failed to meet her *prima facie* burden.

ABM's motion for summary judgment is GRANTED as to Ms. Canales' gender discrimination claim.

## E.   Termination in Violation of Public Policy:

Mr. Barrera[7] claims that he was terminated in violation of public policy.  (ECF No. 11, pp.10-11).  Specifically he contends that he was placed on involuntary FMLA leave "and told to provide proof that he could perform the essential functions of a shuttle bus driver, despite no change in his physical condition or in the duties he was successfully performing as a fueler. (ECF No. 11, p.10).  Mr. Barrera alleges that this action was taken against him because he pursued workers compensation benefits.  *Id.*  ABM denies these allegations and asserts that Mr. Barrera was terminated solely because he failed to provide a proper medical release in order to return to work.  (ECF No. 64, pp.17-18).

It is well established that an employer violates Colorado public policy by discharging an employee in retaliation for applying for and receiving workers' compensation benefits.  *Barlow v. C.R. England, Inc.,* 703 F.3d 497, 507 (10th Cir. 2012).  A plaintiff makes a *prima facie* case of wrongful discharge against public policy by presenting evidence that: (1) the employer directed

---

[7] Ms. Canales does not raise this claim.

the employee to perform an illegal act as part of the employee's work-related duties or prohibited him from performing a public duty or exercising an important job-related right or privilege; (2) the action directed by the employer would violate a specific statute on the public health, safety or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or his right or privilege as a worker; (3) the employee was terminated as the result of refusing to perform the act directed by the employer, and (4) the employer was aware or reasonably should have been aware that the employee's refusal to comply with the employer's order was based on the employee's reasonable belief that the action ordered was illegal, contrary to clearly expressed statutory policy relating to the employee's duty as a citizen, or violated the employee's legal right or privilege as a worker. *Id.*(citing *Roe v. Cheyenne Mtn Conf. Resort, Inc.,* 124 F.3d 1221, 1235 (10th Cir. 1997).

Mr. Barrera bases his public policy claim on the contemporaneous proximity between the worker's compensation hearing officer's January 6, 2012, order requiring ABM to produce Mr. Barrera's personnel file and ABM placing Mr. Barrera on "involuntary" FMLA leave on January 9, 2012 and instructing him to provide proof that he could perform the essential functions of a shuttle bus driver.  (ECF No. 11, p.10).

ABM responds that on December 23, 2011, it directed Mr. Barrera to submit to a company-paid physical examination to determine his fitness for duty because of Mr. Barrera's December 22, 2011, voluntary submission of an incident report stating that he was taking two sedating medications, working with pain in his back and right leg and driving with his left foot because of foot numbness.  (ECF Nos. 64, pp. 5, 18; 64-17; 64-19).

Viewing evidence in the light most favorable to Mr. Barrera, the non-moving party, a reasonable juror could not find the requisite causal link between the actions. Despite ABM's apparent reluctance to produce Mr. Barrera's personnel file in his worker's compensation case, and especially considering the alarming incident report Mr. Barrera submitted, there is insufficient evidence in the record to link the January hearings officer's order and the pre-dating December challenge to Mr. Barrera's ability to perform the essential functions of his job. Defendant's motion for summary judgment on this claim is therefore GRANTED.

## V.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 64) is GRANTED IN PART and DENIED IN PART as follows:

Defendant's Motion for Summary Judgment on:

Claim One - Discrimination under the ADAA, against Mr. Barrera, is DENIED;

Claim Two - Discrimination under the ADAA, against Ms. Canales, is GRANTED;

Claim Three - National Origin Discrimination against both plaintiffs is GRANTED;

Claim Four – Termination of Mr. Barrera in violation of Public Policy is GRANTED;

Claim Five – Retaliation against Ms. Canales under Title VII is GRANTED;

Claim Six – Gender Based Discrimination against Ms. Canales is GRANTED.

Because Ms. Canales' claims are therefore dismissed in their entirety, Defendant's Motion to Sever (ECF No. 98) is denied as MOOT.

IT IS SO ORDERED.

DATED this 5th day of February, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge